STANDARD MUTUAL INSURANCE COMPANY, Plaintiff-Appellant, v. WESTERN STATES MUTUAL INSURANCE COMPANY, Defendant-Appellee—(RAYMOND BURG, Plaintiff-Appellant, v. STANLEY L. SANDS, Defendant-Appellee.)

(No. 11504; ■■■■■■■■■)

Fourth District—September 13, 1972.

Roberts and Kepner, of Springfield, (Maurice Kepner, of counsel,) for appellants.

Olsen & Miller, of Springfield, (Ben K. Miller, of counsel,) for appellees.

Mr. JUSTICE SMITH delivered the opinion of the court:

A & B collide. A and his wife were injured and their child killed. A's car was totally destroyed. He settled with his own insurance carrier (Standard) on the car and it became subrogated. The Release and Subrogation Receipt signed by A and given to Standard warranted that no settlement had been made with anybody against whom a claim might

lie and no release had been given to anyone responsible for the loss and that no such settlement would be made or release given without the consent of Standard and subrogated Standard to all of the rights, claims and interest which A might have against anybody liable for the loss. B's insurance carrier (Western) was notified of Standard's subrogation claim against it. Thereafter A (unbeknownst to Standard) gave B a full release and settlement of any claim he might have—"hereby releases and forever discharges [B] * * * from any and all claims, demands, actions [etc.] * * * either in law or in equity * * * from the beginning of the world[!] to the day of the date of these presents". (Exclamation supplied.) Standard's subrogation claim was subsequently rejected by Western—"We have an extensive investigation on this case and it clearly shows that there was negligence on the part of your driver * * * we must respectfully decline to entertain any claims and you may be judged [sic] accordingly."

A (really Standard) thereupon sued B (really Western) for negligence asserting as his (its) damage the amount of the subrogation claim. B denied negligence and set up an affirmative defense of release, i.e., the full release and settlement given by A to B. A replied that such release was only for A's personal injury claim (and a $50 deductible amount) and did not include Standard's subrogation and alleged that there had been a mutual mistake, that the general release did not reflect the settlement as agreed to and intended by A and B, and though it purported to be a general release, it should have in fact excepted the amount of the subrogation. A therefore asked for reformation of the release to express the true intent of the parties—that Standard's subrogation claim was not covered by A's release to B.

Neither A nor B testified. The settlement between them had been consummated by their respective attorneys, one of whom, B's was deceased at the time of the trial. A's attorney did testify over objection, B asserting his disqualification under the Dead Man's Act, particularly section 4. (Ill. Rev. Stat. 1969, ch. 51, par. 4.) As we have noted Standard's subrogation claim was known by Western—this by stipulation—prior to the execution of the release by A. A's attorney, by the way, at no time represented Standard. Standard had notified Western directly.

■■■ If we disregard the testimony of A's attorney—thus not reaching the question of whether he was competent—the only remaining evidence to be considered is an exhibit prepared by A's attorney, captioned "Itemized List of Specials", one item reading, "Insurance Deductible $50.00". There is some dispute as to whether this actual exhibit reached B's attorney, but there was testimony by A's attorney that he had supplied a like itemized list of specials to B's attorney and this was sufficient,

in our opinion, for admission into evidence, and such testimony by A's attorney is competent, assuming the Dead Man's Act might otherwise impinge as to conversations between the attorneys. The issue of reformation was separated from the negligence aspect for trial purposes, and following trial, reformation was denied. A (Standard) says here that such denial is against the manifest weight of the evidence. We agree.

■■■ Evidence must be clear and convincing for a court to reform an instrument on the basis of mutual mistake—clear and convincing that whatever were the parties intentions, such intentions were not set forth in whatever it was they put to paper and signed. It seems clear to us on the evidence as set forth that it was the intention of A to release B (in effect Western) of all liability except the loss he suffered when his automobile was "totaled" and for which he had been reimbursed by Standard, but included significantly, the $50 "Insurance Deductible". In other words, Standard's subrogation claim was $50 less than the actual loss, hence A was still "out" $50, and it was therefore properly included as an item in his list of "Specials". The other specials were the usual, doctor and hospital bills, loss of pay, and in this case, tragically, a funeral home.

Of course, A should never have released B as such action contravened his agreement with his insurer, Standard—but Standard is not suing A. Notwithstanding notice of Standard's claim, Western accepted from A on behalf of its insured B, what it now says is a general release and therefore, it says, includes any claims of A that were subrogated to his insurer—Standard. But such could certainly not have been Western's intention when it paid a consideration to A, that it would thereby be absolved of Standard's subrogation claim. We are not saying that the release was actually accepted or proposed or prepared or delivered in bad faith, by anyone, but rather that just maybe there were some various assumptions that did not square with reality—a long-winded way of saying that just maybe there was a "mutual mistake". The prior notice of Standard's claim precluded an intention (legally) on Western's part that the release was general. This being so, the general release from Western's point of view was a mistake because it collided with its knowledge that a subrogation claim with a non-party to the release was very much alive and kicking—alive and kicking to be paid by Western. And if this is true, it was *a fortiori* as to A. He knew, in law, he couldn't give a full release—the release he did give. If so, it likewise could not have been his intention to give one, and if he did sign something which purported to be a full release—it was a mistake on his part. The equation is simple —a mistake by each equals reformation of the release to speak their intentions and to excise their non-intentions.

Thus, it could not have been A's intention to give a general release that included Standard's subrogation. As his attorney testified, he was not representing Standard, and as he pithely put it—"I had no obligation to them as they said they would take care of themselves". Again, B's attorney (and Western) knew of Standard's subrogation claim. Yet, it paid on behalf of B a sum of money to A obtaining thereby A's release of B. But with the knowledge of the subrogation claim, Western can hardly argue that it expected and intended—and hence received—a general release. The itemized list of specials contained no listing that the subrogation claim was included, on the contrary, the clear implication of "Insurance Deductible $50.00", with all the rest of the listed items being either doctor, hospital or funeral bills, is just the opposite—*i.e.*, that the subrogation claim was indubitably more than $50, and whatever it was it most assuredly was not in the "Itemized List of Specials". Incidentally, the Release and Subrogation Receipt of Standard to A was for $1345 and deducting salvage therefrom, Standard's loss was $975. The total settlement paid by Western on behalf of B to A was $3500, broken down as follows: $1000 to A as Administrator for the wrongful death of his child, $2000 to A and his wife, and $500 to A alone. The total of the itemized list of specials was $1,991.35, A's hospital expense was $321.90, his doctor's bill $158, and loss of time $276.

Under these circumstances, the court should have reformed the release by decreeing an exception therein that the subrogation claim of Standard was not therein included and its failure to do so was against the manifest weight of the evidence. Accordingly, since only the reformation issue was tried, this cause is remanded with directions to try the issue of negligence between the parties on the complaint and answer, with the affirmative defense of release stricken. With this disposition we need not take up the separate action of Standard (consolidated here and at trial) directly against Western for wrongful inducement.

Reversed and remanded with directions.

CRAVEN, P. J., and SIMKINS, J., concur.